UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 1:10-cr-181-2

v.

HON. JANET T. NEFF

DENTON MICHAEL GILLAM,

Defendant.
_______________________________________/

**SENTENCING MEMORANDUM**

This case, where defendant pleaded guilty and was sentenced after the effective date of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, presents unique facts on which to determine whether to apply the penalty provisions of 21 U.S.C. § 841, as amended by § 2 of the Fair Sentencing Act. This Court, persuaded that the Fair Sentencing Act permits no further federal crack cocaine sentencings that are not "fair," rendered its oral sentencing decision on November 22, 2010, imposing on defendant a total term of imprisonment of 18 months. This memorandum is issued in conjunction with the written Judgment of Sentence to more fully explain the reasons for the sentence imposed.

I. Background

On June 24, 2010, an Indictment was filed charging defendant with conspiracy to possess with intent to distribute and distribute fifty grams or more of cocaine base (crack cocaine), 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 21 U.S.C. § 841(b)(1)(A)(*iii*) (Count I); and possession with intent to distribute five or more grams of cocaine base (crack cocaine), 21 U.S.C. § 841(a)(1); 21 U.S.C. §

841(b)(1)(B)(*iii*) (Count III) (Dkt 17). On or about June 16, 2010, the date of the offense conduct giving rise to Count III, 21 U.S.C. § 841(b)(1)(B)(*iii*) required a prison term of no "less than five years," given the quantity of crack cocaine involved.

On August 3, 2010, however, the President signed into law the Fair Sentencing Act, which is described in the preamble as an Act "[t]o restore fairness to Federal cocaine sentencing." The Fair Sentencing Act raised the amount of crack cocaine necessary to trigger the five-year mandatory minimum from 5 grams to 28 grams.[1] Pub. L. No. 111-220, § 2(a)(2). Accordingly, under the Fair Sentencing Act, defendant would *not* be subject to a mandatory minimum of five years in prison.

On August 16, 2010, defendant pleaded guilty to Count III in the Indictment. As part of his plea agreement, defendant agreed to cooperate with the government (Plea Agmt., Dkt 32 at ¶ 6).

The probation officer who prepared the Pre-Sentence Report (PSR) in defendant's case used the November 1, 2010 U.S. SENTENCING GUIDELINES (U.S.S.G.) MANUAL (PSR ¶ 58). The probation officer calculated defendant's total offense level as 19 and his criminal history category as 2, resulting in a Guidelines imprisonment range of 33 to 41 months, unless the five-year mandatory minimum applied (PSR ¶¶ 69, 73, 103).

The government filed a Motion for Downward Departure under U.S.S.G. § 5K1.1 (Dkt 54). The government indicated that defendant provided a proffer detailing his knowledge of the illegal activity and the role of his co-defendant, Lonnie Williams, that defendant provided additional information about drug quantity, and that the case agent regarded defendant's information as very truthful (*id.* at 2-3). The government stated its belief that defendant's cooperation was a significant factor in co-defendant Williams' decision to plead guilty in this case (*id.* at 3).

---

[1]Section 2(a)(1) of the Fair Sentencing Act also raised the amount of crack cocaine necessary to trigger the ten-year mandatory minimum from 50 grams to 280 grams.

Defendant filed a Motion for Departure from Guideline Range based on U.S.S.G. § 5K1.1 (Substantial Assistance to Authorities) as well as U.S.S.G. §4A1.3 (Overstated Criminal History Category) (Dkt 52). On the latter, defendant pointed out that his entire criminal history category is comprised of one offense of malicious destruction of property, an offense that was "designed to be a senior prank at his high school" and one that was ultimately dismissed upon defendant's successful completion of probation under the Holmes Youthful Trainee Act, MICH. COMP. LAWS § 762.11 *et seq.* (*id.* at 1-2).

Defendant appeared before the Court for sentencing on November 22, 2010. The parties had no objections to the facts or Guidelines scoring in the Pre-Sentence Report (PSR). The Court also found that the PSR's Guidelines calculations were accurate. For the reasons stated on the record, the Court granted the government's § 5K1.1 motion and granted defendant's §4A1.3 motion for a downward departure. Consequently, defendant's adjusted offense level is 17 and his criminal history category is 1, resulting in a new Guidelines imprisonment range of 24 to 30 months. After considering the factors under 18 U.S.C. § 3553(a), the Court announced a sentence below the advisory Guidelines range. Specifically, the Court sentenced defendant on Count III to a total term of imprisonment of 18 months to be followed by a four-year term of supervised release. The government dismissed Count I of the Indictment against defendant.

II. Sentencing Procedure

In determining the sentence to be imposed, a district court must consider the advisory Guidelines range and all relevant factors identified in 18 U.S.C. § 3553(a). *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for —
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —
> >
> > > (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> > >
> > > (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced;
>
> * * *
>
> (5) any pertinent policy statement —

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities . . .; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Sentencing Guidelines are the "starting point and the initial benchmark" for federal sentencing. *Gall v. United States,* 552 U.S. 37, 49 (2007); *United States v. McBride,* 434 F.3d 470, 475-76 (6th Cir. 2006). In practice, this means that the court must begin at the proper base offense level, apply any applicable enhancements or reductions to arrive at the adjusted offense level, and use the resulting offense level with the appropriate criminal history category to arrive at a sentencing range. *United States v. Thompson,* 515 F.3d 556, 561 (6th Cir. 2008). "Once the district court has calculated the appropriate Guidelines range, it then considers that range in light of the other relevant § 3553(a) factors in fashioning the sentence." *Id.* After reviewing the § 3553(a) factors, the district court must ultimately "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2). 18 U.S.C. § 3553(a).

The district court must make an individualized assessment based on the facts presented and adequately explain its choice. *Gall,* 552 U.S. at 50. The court must address the relevant factors in reaching its conclusion. *United States v. Kirchhof*, 505 F.3d 409, 413 (6th Cir. 2007). It need not

explicitly consider each of the § 3553(a) factors or engage in a rote listing or some other ritualistic incantation of the factors. *Id.*

III. Defendant's Sentence

As the Sixth Circuit Court of Appeals has observed, the Fair Sentencing Act contains no express statement that it is retroactive, nor can any such express intent be inferred from its plain language. *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). Whereas the defendant in *Carradine* was sentenced before the August 3, 2010 effective date of the Fair Sentencing Act, this defendant's plea and sentencing took place after the Act's effective date, presenting the question of the proper application of the Fair Sentencing Act to these facts. In giving this question careful consideration, the Court has found helpful three different authorities.

First, in *United States v. Douglas,* ___ F. Supp. 2d ___, 2010 WL 4260221, *6 (D. Me. 2010), United States District Court Judge D. Brock Hornby engaged in an exhaustive analysis of the issue on facts similar to those at bar and ultimately concluded that "a defendant not yet sentenced on November 1, 2010, is to be sentenced under the amended Guidelines, and the Fair Sentencing Act's altered mandatory minimums apply to such a defendant as well."

As a threshold matter, the district court observed that the Act does not indicate categories of offenders to whom it applies—those who have not yet offended, offenders not yet convicted, offenders convicted but not yet sentenced, or offenders already sentenced. *Douglas, supra* at *1. The court recounted how the factual premises for the severe powder/crack cocaine differential came into question and increasing attention was directed to significant racial disparities that it produced in federal drug sentencing. *Id.* at *2. The court pointed out that the new law contains significant ameliorating provisions, modest penalty increases, and some urgency. On the latter, the court noted

that the law has already caused the Sentencing Commission to issue amended, emergency guidelines, including amendments that reduce the base offense levels for various quantities of crack cocaine, all effective November 1, 2010. *Id.* The quantity amendments are based explicitly upon the Fair Sentencing Act's new mandatory minimum sentences and will apply to all offenders sentenced after November 1, 2010, even if those offenders committed their offenses before August 3, 2010. *Id.* The district court pointed out that the ex post facto clause does not prohibit retroactive change that lightens penalties, as does the changed crack/powder ratio. *Id.* at *3.

The district court also gave attention to the import of the "Saving Clause," 1 U.S.C. § 109 ("The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."). *Douglas, supra* at *3. The court found that the Supreme Court's interpretation of the Saving Clause foreclosed the argument that the Fair Sentencing Act does not "release or extinguish" a penalty, the concern of the Saving Clause, as well as the argument that the Saving Clause does not apply to remedial or procedural changes, the type of changes made by the Fair Sentencing Act. *Id.* at *4. Citing Congress' authority to make its new reform apply only to criminal conduct occurring after the statute's enactment, the court also rejected the argument that applying the Saving Clause to preserve the old mandatory minimums would raise Fifth or Eighth Amendment concerns. *Id.*

However, the district court "found force" in the argument that provisions of the Fair Sentencing Act, either by express declaration or necessary implication, prevent applying the 1871 Saving Clause to preserve the harsher statutory minimums for sentences imposed in the future. This

Court finds especially persuasive the district court's thorough treatment of the argument, which is as follows:

> [T]here is no saving clause in the Fair Sentencing Act itself. To the contrary, in this statute Congress expressly granted the Commission emergency Guideline amendment authority, so that the Commission could adopt Guideline amendments effective almost immediately. And in addition, Congress expressly directed the Commission to adopt Guideline amendments "as soon as practicable, and in any event not later than 90 days", i.e., by November 1, 2010. What amendments? To be sure, the new enhancement provisions, but also any changes in the new crack penalty provisions. Where would the latter changes come from? From the new statutory minimum provisions. According to the statutory language, Congress instructed the Commission "pursuant to the emergency authority provided under paragraph (1), [to] make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." The Commission has followed Congress's instructions. Effective November 1, 2010, "the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving other drugs is consistently and proportionally reflected throughout the Drug Quantity Table." But the new Guidelines cannot be "conforming" and "achieve consistency" (Congress's express mandate) if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statute of limitations runs on pre-August 3, 2010 conduct.
>
> What is more, for years the Sentencing Reform Act of 1984 has directed expressly that the governing Guidelines are those in effect on the day a defendant is sentenced. The Guideline commentary refers to this statutory provision as "Congress's directive to apply the sentencing guidelines in effect at the time of sentencing." Thus, during the past two decades of the Guidelines' existence, whenever the Commission has adopted Guideline amendments, those amendments have applied to all defendants sentenced thereafter, regardless of when the crime was committed. That is what will happen to the new Guidelines' alterations of the base offense levels for various quantities of crack: the new Guidelines will apply to all future sentencings after November 1, 2010, even if the criminal conduct occurred before the Fair Sentencing Act's effective date. Congress "expressly" required that outcome by ordering the emergency amendments within 90 days. Thus, many pre-August 3, 2010 offenders will benefit from the changed crack offense levels, at least if the mandatory minimums do not apply to them. Congress instructed the Commission to make such changes and make them immediately, under an existing statutory structure that makes them apply to those who have already offended but who have not yet been sentenced. It would be a strange definition of "conforming" and "consistency" to have these new amended Guidelines go into effect while the old and therefore inconsistent statutory minimums continue.

> Finally, Congress stated that its goal was to "restore fairness to Federal cocaine sentencing." Understandably, Congress might not have wanted a large volume of previously sentenced offenders to be released from prison immediately. But what possible reason could there be to want judges to continue to impose new sentences that are not "fair" over the next five years while the statute of limitations runs? Unlike [*Warden v.*] *Marrero* [417 U.S. 653 (1974)], the explicit congressional grant of emergency guideline amendment authority and the mandate of "consistency" and "conforming" amendments, coupled with the express language of the Sentencing Reform Act of 1984 (that the Guidelines in effect on the day of sentencing control irrespective of when offense conduct occurred), unmistakably demonstrate Congress's urgency and expectation of immediate change.

*Douglas, supra* at *4-5 (footnotes omitted).

The district court ultimately concluded, based upon the context of the Act, its title, its preamble, the emergency authority afforded to the Commission, and the Sentencing Reform Act of 1984, that "Congress did not want federal judges to continue to impose harsher mandatory sentences after enactment merely because the criminal conduct occurred before enactment." *Douglas, supra* at *6. As the Court noted at the sentencing in this case, the Court is persuaded by the positions Judge Hornby takes in this carefully reasoned opinion and his view that a contrary operation of the Fair Sentencing Act would belie its title, at least for the next few years. *Id.* at *6 n.57.

The sense of urgency implicit in the Fair Sentencing Act was reiterated in the second source that the Court finds persuasive: a November 17, 2010 letter to Attorney General Eric Holder from the Act's lead sponsors, United States Senators Richard J. Durbin and Patrick J. Leahy. The Act's lead sponsors wrote the Attorney General "to urge [him] to apply its modified mandatory minimums to all defendants who have not yet been sentenced, including those whose conduct predates the legislation's enactment." The sponsors indicated that their goal in passing the Fair Sentencing Act "was to restore fairness to Federal cocaine sentencing as soon as possible," that "every day that passes without taking action to solve this problem is another day that people are being sentenced

under a law that virtually everyone agrees is unjust." The sponsors indicated their belief that the Act, in significantly reducing the disparity between crack and powder cocaine, "will decrease racial disparities and help restore confidence in the criminal justice system, especially in minority communities."

The Act's lead sponsors opined that this sense of urgency is why they required the U.S. Sentencing Commission to promulgate an emergency amendment to the Sentencing Guidelines, which took effect on November 1, 2010, and will apply to all defendants who have not yet been sentenced. They also opined that this sense of urgency is why

> the Fair Sentencing Act's reduced crack penalties should apply to defendants whose conduct predates enactment of the legislation but who have not yet been sentenced. Otherwise, defendants will continue to be sentenced under a law that Congress has determined is unfair for the next five years, until the statute of limitations runs on conduct prior to the enactment of the Fair Sentencing Act. This absurd result is obviously inconsistent with the purpose of the Fair Sentencing Act.

The Act's lead sponsors referred Attorney General Holder to District Judge Hornby's opinion in *Douglas, supra,* "wholehearted agreeing" with Judge Hornby's query, "what possible reason could there be to want judges to continue to impose new sentences that are not 'fair' over the next five years while the statute of limitations runs?" as well as his view that it would be "gravely disquieting to apply hereafter a sentencing penalty that Congress has declared unfair." As the position of the Assistant United States Attorney in *Douglas* had apparently been of a contrary view, the sponsors urged Attorney General Holder to "issue guidance to federal prosecutors instructing them to seek sentences consistent with the Fair Sentencing Act's reduced mandatory minimums for defendants who have not yet been sentenced, regardless of when their conduct took place."

Third, this Court benefitted in its sentencing decision from the argument of Law Professor Douglas A. Berman, set forth in his "Sentencing Law and Policy" blog on November 16, 2010.

There, Professor Berman argues that the decision of the United States Supreme Court in *Abbott v. United States,* ___ U.S. ___; 131 S. Ct. 18 (2010) (adopting the government's approach to the application of the special firearm sentencing provisions set forth in 18 U.S.C. § 924(c)), provides new and added support for applying the Fair Sentencing Act's provisions concerning crack cocaine sentences to all pending cases (http://sentencing.typepad.com, last visited 11/17/2010). Professor Berman makes the following points in support of his argument:

> First, at slip op. 10 of the *Abbott* opinion, the Supreme Court stresses the "primary objective" of the statutory amendment at issue in that case. The *Abbott* court reasons that because Congress meant to broaden the reach of the gun sentences set out in 924(c), the defendant's arguments to limit the reach of that statute were not compelling. I think the inverse argument could be made concerning the "primary objective" of the new FSA amendments to crack sentencing provisions: because Congress clearly meant to reduce the scope and impact of the disparity between crack and powder offenses, the government's arguments to limit the applicability of the new statute seem to me to be less than compelling.
>
> Second, at slip op. 11 of the *Abbott* opinion, the Supreme Court stresses the defendants' suggested statutory reading "would result in sentencing anomalies Congress surely did not intend" because, under that reading, "the worst offenders would often secure the shortest sentences." A similar argument can be made concerning the government's suggested approach to the FSA: because the US Sentencing Commission has amended and made applicable new crack guidelines that plainly apply to pending case[s] involving large quantities of crack, the failure to give the new FSA statutory provision in yet-to-be-sentenced cases means that only "the worst offenders would often secure the shortest sentences" as a result of the FSA's changes while cases are still in the pipeline.
>
> Third, at slip op. 14 of the *Abbott* opinion, the Supreme Court rejects the defendants' suggestion that Congress expected the federal sentencing guideline to serve as a gap-filler because there is not any indication that "Congress was contemplating the Guidelines' relationship" to mandatory minimum sentencing when it amended 924(c). But, in sharp contrast, Congress in the FSA plainly and expressly did contemplate the Guidelines' relationship to crack sentencing statutes when it enacted the Fair Sentencing Act. Thus, the kind of Guideline-centric statutory construction claim rejected in *Abbott* should have far more force in the FSA setting.
>
> Fourth, at slip op. 16 of the *Abbott* opinion, the Supreme Court asserts there is "strong contextual support" for government's statutory interpretation in that case.

> In contrast, as I suggested in this amicus letter submitted in a pending case in the Southern District of New York, I see "strong contextual support" for defendants' proposed application of the FSA to all pending not-yet-sentenced cases.

After giving careful consideration to the exhaustive treatment of the issue in these three resources, the Court agrees that the penalty provisions of 21 U.S.C. § 841, as amended by § 2 of the Fair Sentencing Act, are properly applied in sentencing this defendant, who pleaded guilty and is being sentenced after the Act's effective date.

Moreover, for the reasons stated on the record, even if the pre-amended penalty provisions of 21 U.S.C. § 841 apply to this defendant, the Court would impose a total term of imprisonment of 18 months as a sentence sufficient, but not greater than necessary, to serve the purposes of sentencing as delineated in § 3553(a)(2). Other conditions of defendant's sentence appear in the accompanying Judgment of Sentence.

DATED: December 3, 2010

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge